PALMETTO LUMBER COMPANY v. RISLEY.

1. An allegation in the complaint of the corporate existence of the plaintiff is no part of the cause of action, and is therefore not put in issue by a general denial.

2. Where the president of a corporation takes a deed of conveyance to himself in settlement of a debt due to the company by the grantor and erects improvements thereon at the expense of the company, afterwards charging his own account with such debt and expenditures, a trust in such property results to the company.

3. A reference as to counsel fees to plaintiff's attorneys, is a mere order of inquiry, and not legal error, whether the counsel fees are allowable or not under the authority of the court.

Before FRASER, J., Georgetown, May, 1885.

The appeal in this case was from the following Circuit decree:

The action has been brought by the plaintiff as an incorporated company. The defendant, David Risley, does not distinctly admit or deny the fact of incorporation, but in his answer several times refers to plaintiff as "said company." The organization with officers was that of an incorporated body, and not that of a partnership, and the testimony nowhere discloses the names of the partners, if there were such, but all persons referred to as interested in the property of the company are referred to in such terms as are entirely consistent with the idea of their being stockholders in a company. I therefore conclude that the plaintiff is, as alleged, an incorporated company. The defendant, David Risley, was its president, and had the management of its affairs at the mill at Georgetown.

On April 21, 1881, Francis S. Parker, Eliza T. Parker, and others, conveyed to David Risley a certain parcel or lot of land described in the complaint, and called the "Parker lots." The consideration on which the said conveyance was made was that it was in payment of certain accounts due on the books of said company by James R. Parker, Rutledge Parker, and Arthur M. Parker, amounting in all to five hundred and ninety-six 88-100 dollars.[1] After the conveyance was made David Risley erected

[1] But the deed only recites a consideration of "six hundred dollars".— REPORTER.

on the "Parker lots" a large number of tenement houses, with
material and labor furnished and paid for by the company. The
account of these transactions was kept and charged to the "Par-
ker lots," and all rents credited on the same account. On June
11, 1883, the amount of balance against the "Parker lots" was
$4,199.76, and this amount was then charged, by order of David
Risley, to *his own* individual account.

According to the manner in which this account was kept, it does
not, when compared with other accounts, indicate with any cer-
tainty whether they were kept as the individual account of David
Risley, or of the company. In my view it is not important.
The account of David Risley, amongst other things, shows that
on August 31, 1880, an amount of $5,831 16-100 was credited
to him. The deed for the "Parker lots" was made on April 21,
1881, and on June 30, 1882, the same amount of $5,831.16,
covering the same items, was, by David Risley's consent, charged
against him in his account. There was a crisis in the affairs of
the company June 11, 1883, and after this entries were made on
the account of David Risley, including $12,076.19 "interest on
stock," and other large items to his credit, by which there is a
large apparent balance in his favor.

I have come to the conclusion, however, that at no time during
which these funds were being drawn from the company assets for
the purchase and improvement of the "Parker lots," was there
any legitimate balance in favor of David Risley, which he had
a right on his own volition to draw and appropriate to his own
use. If it be admitted that King and other officers of the com-
pany knew that David Risley was making these investments for
his own use and benefit, which I think has not been established,
it cannot give validity to the transaction. There has been no act
of the company which authorized it, so far as appears in the evi-
dence, nor has there been any authority conferred by any corpor-
ate act on any of the officers to make such use of the assets. It
does not appear who are the copartners or stockholders, whether
Risley, Lloyd, and King, or whether a much larger number.
Whoever or how many there may be, there should in my view
have been some act of the corporation as such to authorize such
use of its assets.

I therefore find that David Risley, president of the company, used the assets of the company to purchase and improve the "Parker lots," not having a right so to use the said assets, he being in debt to the company at the time, and not having the authority of the company to use the assets for the purchase of property for his own use.

Having come to the conclusion that the Palmetto Lumber Company was not a partnership, but an incorporated company, it is not important to consider what would be the effect of the withdrawal by one partner of all or a part of his interest in the assets, and the investment of it in property in his own name, without the consent of the other members of the firm. We must consider the case of the president and business manager of a corporation, who invests its assets, by his own will, in property in his own name and for his own use, and the effects of such transaction on the property thus purchased. Whether the practice, which seems to have been a common one with this company, of allowing its officers, and perhaps its stockholders, to use the funds and accounts for the ordinary expenses of living, and perhaps as a substitute for money, was a proper one, cannot affect the question here.

The general and well-settled rule is, that when one person furnishes, at the time of the purchase, the consideration, and another takes the title, it is a question of intention whether or not there is a resulting trust. If the title is made to certain relatives, the presumption is that it is a gift. If the title is made to a stranger, the presumption is that there is a resulting trust in favor of him who furnishes the consideration. In either case, however, it is a question of intention on the part of the person who furnishes the consideration, an intention which may, notwithstanding the presumption, be shown by parol testimony. There is, however, a large class of trusts, constructive trusts, which do not in any way depend on intention, and are declared and enforced by the court contrary to the express intention of the party who took and holds the title. It is perhaps too narrow a view to say that in all cases the court gives relief on the ground of fraud.

Besides other cases, "a constructive trust arises" whenever

another's property has been "wrongfully appropriated and con-
verted into a different form.    If one person having money or any
kind of property belonging to another in his hands, wrongfully
uses it for the purchase of lands, taking title in his own name;
or if a trustee or other *fiduciary* person wrongfully converts the
trust funds into a different species of property, taking to himself
the title; or if an agent, or bailee, wrongfully disposes of his
principal's securities, and with the proceeds purchases other secu-
rities in his own name; in these and all *similar cases* equity im-
presses a constructive trust upon the new form or species of pro-
perty, not only while in the hands of the original wrong doer, but
as long as it can be followed and identified in whosoever hands
it may come, except into those of a *bona fide* purchaser for value
and without notice; and the court will enforce the constructive
trust for the benefit of the beneficial owner or original *cestui que
trust*, who has been thus defrauded." *Pom. Eq.*, § 1051.   It
seems to me that the facts bring this case clearly within the
principle thus laid down. and that there is a constructive trust in
favor of the plaintiff in the Parker lots, and the improvements
put upon them since the purchase.

Under this view of the case the judgment of the defendant,
Mrs. Risley, whether *bona fide* or not, should not be enforced
against the property.

It is therefore ordered and adjudged, that the defendant, Mrs.
Georgie H. Risley, be perpetually enjoined from enforcing in any
way against the said Parker lots her judgment against her co-
defendant, David Risley.   It is further ordered and adjudged,
that the plaintiff is entitled to a constructive trust in the said
Parker lots, and that the same be, and is hereby, established and
declared.   It is further ordered that the sheriff of Georgetown
County do proceed to sell, &c.

From this decree the defendant, David Risley, appealed upon
several exceptions raising the points decided by this court.

*Mr. Richard Dozier*, for appellant.

*Messrs. Walter Hazard* and *Simonton & Barker*, contra.

August 2, 1886.[1]   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   This was an action in the nature of a bill in equity, instituted by the plaintiff company against David Risley and his wife, Georgie H. Risley, to set up a resulting trust in certain parcels of land known as the "Parker lots," and to enjoin the sale of them as the property of David Risley under a judgment confessed by the said Risley to his wife, Georgie H. Risley.   The plaintiff alleged that the "Palmetto Lumber Company is a body corporate under the laws of this State," doing business in Georgetown in the manufacture and sale of lumber; that about the year 1881, one Parker, being indebted to the corporation in the amount of $600, made an arrangement with the company, by which certain parcels of land known as the "Parker lots," were to be conveyed to them in payment of the debt; that David Risley was then the president and active business man of the company, and he caused the conveyance of the same to be made to himself individually, and kept the deed from the record, while he was putting costly improvements on the lots at the expense of the company; that in June, 1883, the directors and stockholders, having, as they supposed, discovered that there was something wrong, took measures to secure themselves, whereupon David Risley placed the deed on record, falsely claiming the lots as his individual property, and confessed a fraudulent judgment to his wife, Georgie H., which was levied upon the same, &c.   The plaintiff prayed that a resulting trust in the said lots might be declared in their favor; that the levy made upon the "Parker lots" as the property of David Risley be set aside, and the judgment of the wife, Georgie H. Risley, be perpetually enjoined as fraudulent and void, &c.

Georgie H. Risley demurred to the complaint, upon the ground that it did not state facts sufficient to constitute a cause of action. David Risley answered to the merits, "denying each and every allegation in said complaint contained not hereafter specifically

---

[1] The cases are generally reported in the chronological order of their filing, but owing to the confusion incident to the removal of the Supreme Court records from the State House, it has been found impossible to preserve this order with the succeeding cases of this volume, without delaying its publication.—REPORTER.

admitted." He answered fully, denying that he purchased the aforesaid "Parker lots" as president, for and in behalf of the company, but for himself individually, claiming that as president he had no right to purchase lands for the company; that in the accounts he charged himself with the "Parker debt," and all expenses incurred for improvements on the "lots," and that therefore "the purchase money and all sums expended for improvements were his own money and means," &c., but in his answer he did not specifically deny the allegation of the complaint that the "Palmetto Lumber Company" is a corporate body under the laws of this State.

The cause came on for a hearing before Judge Fraser. The plaintiff offered no proof of their charter of incorporation, but confined themselves to the merits of the case. The judge held that the plaintiff, as alleged in the complaint, was an incorporate company, and that the defendant, David Risley, was its president and had the management of its affairs at the mill at Georgetown. He also decreed upon the testimony that the plaintiff corporation had a resulting trust in the "Parker lots," enjoined the enforcement of the levy on the execution of the wife, Georgie H. Risley, and ordered the land sold, &c. From this decree the defendant, David Risley, appealed upon numerous exceptions, which, being long and in the "Brief," need not be set out here. The defendant, Georgie H. Risley, did not appeal, and therefore the demurrer goes out of the case.

The first three exceptions of David Risley make the point that the Circuit Judge erred in not dismissing the complaint, for the reason that the plaintiff, having offered no proof of its charter as a corporate body, failed to show legal capacity to sue. This raises, in an equity suit, a question analogous to that of non suit in a law case for lack of proof; and involves the consideration of the point as to what proof was necessary under the pleadings. One of the first rules of pleading under the code is, that "every material allegation of the complaint, not controverted by the answer, as prescribed in section 170, * * shall, for the purposes of the action, be taken as true." *Code*, § 189. Section 170, as to the manner in which allegations must be "controverted," provides that "the answer of the defendant must contain a general

or specific denial of each material allegation of the complaint controverted by the defendant, or of any knowledge or information thereof, sufficient to form a belief," &c.   The plaintiff in the complaint alleged that it was "a body corporate" under the laws of the State; and the defendant in his answer did not make specific denial of the fact alleged, but in general terms denied "each and every allegation in the complaint contained not specifically admitted."

Did this answer sufficiently "controvert" the allegation, so as to put the plaintiff to proof of its corporate existence?   As the allegation concerned only the legal capacity of the plaintiff to sue, we think it was necessary for the defendant to controvert it by an express specific denial, not difficult to make, in order to put the fact properly in issue.   It is true that a "general denial" puts in issue all the material allegations constituting the cause of action.   *Pom. Rem.*, § 666.   But, strictly speaking, an allegation of corporate existence is no part of the cause of action, but has reference rather to the means and manner of enforcing it. Want of legal capacity to sue is one of the matters stated in section 165 of the Code, as causes of demurrer.   When it appears on the face of the complaint, the objection can be made only by demurrer; but it may be made by answer, when it does not so appear.   When the objection is made by demurrer, there is no doubt whatever that it "must distinctly state the grounds of objection;" and we cannot see why less should be required when it is allowed to be made by answer.   "Under a general denial the defendant cannot insist that plaintiff has not legal capacity to sue, where that fact does not appear on the face of the complaint." *Wait. Ann. Code*, 248 and notes; *Insurance & Banking Company* v. *Turner*, 8 *S. C.*, 111; *Steamship Company* v. *Rodgers*, 21 *Id.*, 33.

It is urged that this case is not at all analogous to that of the *Steamship Company* v. *Rodgers, supra*, for the reason that there the words of the answer were, "has no knowledge or information sufficient to form a belief as to the truth of the allegations of the complaint," and here they are "denying each and every allegation in the complaint contained," &c.   In respect to requiring the plaintiff to make proof of its corporate existence, we think

that both statements have the same effect; and that, being only different forms of stating a "general denial," neither is sufficient to put the plaintiff to the proof of its corporate existence. A special denial is necessary in an answer as well as in a demurrer. "An answer alleging that defendant has not 'knowledge or information sufficient to form a belief,' &c., makes a complete denial." *Wait. Ann. Code,* 244 and notes.

But in the particular indicated, this case is precisely similar to that of the *Insurance & Banking Company* v. *Turner, supra.* In that, as in this, the defendant in his answer "denied each and every allegation of the complaint." In that case, after calling attention to section 167 of the [old] Code, which sets out the objections that must be taken by demurrer, when the matter appears upon the face of the complaint, the opinion of the court proceeds as follows: "The clear intention of these sections is that the defendant shall give, by his demurrer or answer, specific notice that he intends to rely on one or more of these specific defences, if he wishes to make them available. A general denial of all the facts in the complaint is not a compliance with these requirements of the code. The object of these provisions is to relieve the plaintiff from any necessity of preparing to meet such objections on the trial, unless notified by the pleadings that the defendant intends to rely on one or more of them," &c. If the defendant means to rely on the defence that the plaintiff has no corporate existence, it is very easy to say so specifically, and thus notify the plaintiff. We cannot say that the Circuit Judge committed error in ruling that under the pleadings and evidence the plaintiff, as alleged, was an incorporated company, and organized and officered as such.

All the other exceptions but the last, make the objection in various forms, that it was error in the judge to declare a trust in favor of the plaintiff in the "Parker lots." Although the findings of law and fact are not kept separate, it is manifest that this question is largely one of fact, which has been decided by the judge below. We have read the testimony carefully, and it seems that, briefly stated, the following facts were proved: that the business of the company was to deal in lumber and shingles; that David Risley was president and the active manager; that

the company held a claim against one Parker for about $600, and Risley, without any express authority for that purpose, used this . debt in the purchase of certain lands, known as the "Parker lots," upon which he had houses built at the expense of the company ; that the· "account as to the Parker lots," including the original purchase money (Parker debt), and the costs of improvements, was at first kept separate to itself, without distinctly showing who claimed to be the real owner, but finally Risley put on record a conveyance of the lots to himself individually, and about June, 1883, after the suspension of the company, had himself charged with the "Parker debt" and the costs of improvements, and claimed that the said lots were his own property, purchased for himself with his own money, and subject to be levied and sold under the judgment confessed to his wife, Georgie H.   On this state of facts, we cannot say that the Circuit Judge erred in declaring a trust in favor of the plaintiff in the lots known as "Parker lots," and claimed by the said David Risley as his individual property.

There can be no doubt of the general rule, that where one furnishes the money to purchase land, and the title is taken in the name of another, a trust results in favor of the person furnishing the money.   It is very clear that in the purchase of the "Parker lots," Risley used the claim of the company against Parker, and took title in his own name, and we cannot see any good reason why the case should not fall under the operation of the general rule as to "resulting trusts."   It is true that the Parker debt was, at least in part, the property of Risley as corporator, and that as president he was the agent and manager of the business. But it does not strike us that these facts could give him the right to charge himself with the Parker debt, and then in effect to draw it out of the till, and invest it in property for himself, without raising a resulting trust in the property so purchased.   But we do not think the case makes it necessary for us to go into that subject.   It seems to us enough to say, that as president and agent of the company, Risley was already a trustee for the company, and that it was a breach of that trust to use the money or securities of the company in the purchase of lands, taking title in his own name.   "It is well settled that whenever a trustee or agent deals on his own account and for his own benefit, with the

subject submitted to his charge, he becomes chargeable with the purchase as a trustee." 4 *Kent* (6th edit.), 306 ; *Perry Trusts*, § 127 ; *Pom. Eq.*, § 1051.

Risley as president was certainly never expressly authorized by the company to use the Parker debt for his own purposes, and it was therefore wrongful and a breach of trust for him to use it in the purchase of lots, taking title in his own name —something like the case of a watchman placed to guard property, taking it himself. We do not see that this wrong was in any way cured by the trustee charging himself on the books with the Parker debt and the costs of the improvements placed upon the lots ; for there may be a great difference between owning the land itself, and having only an account for the amount paid for it, which account possibly may be, and in view of the judgment confessed to Mrs. Risley, most probably is, entirely without value.

The Circuit Judge (as the plaintiff may be in failing circumstances) referred it to the clerk of the court "to inquire and report any facts which will enable the court to determine whether a counsel fee shall be paid out of the fund to attorneys for plaintiff and what is a proper fee to be allowed." This was purely a reference of enquiry, and decided nothing. We cannot say that in making it, the judge committed error of law; but we reserve our judgment as to whether a counsel fee should be allowed under authority of the court.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.